## UNITED STEELWORKERS OF AMERICA, AFL-CIO, LOCAL 2610 *v.* BETHLEHEM STEEL CORPORATION

[No. 20, September Term, 1982.]

*Decided January 5, 1983.*

The cause was argued before GILBERT, C. J., and LISS and WILNER, JJ.

*Howard J. Schulman,* with whom was *Peter G. Angelos* on the brief, for appellant.

*Warren M. Davison,* with whom were *Earle K. Shawe, J. Michael McGuire* and *Shawe & Rosenthal* on the brief, for appellee.

*Amicus curiae* brief of Commissioner of Labor and Industry, Department of Licensing and Regulation of the State of Maryland filed. *Stephen H. Sachs, Attorney General,* and *David Blum, Assistant Attorney General,* on the brief.

LISS, J., delivered the opinion of the Court.

This matter arose as the result of two incidents of heat stroke occurring on July 23, 1978, and a subsequent investigation conducted by the Maryland Occupational Safety and Health Administration, Maryland Department of Licensing and Regulation, Division of Labor and Industry (hereinafter referred to as "MOSHA"), at the Sparrows Point, Maryland facility of Bethlehem Steel Corporation (the appellee herein). As a result of that inspection MOSHA

issued a citation and proposed penalty on October 11, 1978, alleging that the appellee violated the "General Duty" clause of the Maryland Occupational Safety and Health Statute, Maryland Code (1957, 1979 Repl. Vol., 1981 Cum. Supp.) Art. 89, § 32, in that the appellee:

> failed to furnish to each of his employees employment and a place of employment which are safe and healthful as well as free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.

More specifically, the citation alleged that:

> On July 23, 1978, 2 cases of heat stroke occurred resulting in the death of one employee and in serious permanent injury to the other employee. That in addition to the aforementioned cases on the same date there occurred 4 additional cases of heat stress; that during the week preceding July 23, 1978, namely July 16, 1978 and July 22, 1978, other heat stress cases occurred. That the employer, having specific knowledge regarding safety and health hazards in the steel industry, and with specific knowledge of aforesaid hazardous conditions pertaining to excessive heat, made no reasonable efforts by precautions in disregard for its statutory obligation to furnish its employees with a safe and healthful workplace.

The citation was further characterized as "serious and willful," with a proposed penalty of $7,000.

As a result of this citation, thirteen days of hearings were conducted before a hearing examiner in November and December, 1978, and January, 1979. Both the appellee and MOSHA were represented by counsel and participated fully at the hearings. The United Steelworkers of America, Local 2610 (appellant herein), chose not to elect party status and neither appeared at nor participated in the proceedings before the hearing examiner.

On November 7, 1979, the hearing examiner issued his

findings of fact and conclusions of law, which read in pertinent part as follows:

> It has not been shown by a preponderance of the evidence that the Steel Industry recognized heat as a hazard likely to cause serious injury, disability or death. Additionally, it has not been shown by a preponderance of the evidence that the "Employer" had or should have had actual knowledge that heat is likely to cause serious injury or serious disability under the conditions existing in the steel making process of the mill. It has also not been shown by a preponderance of the evidence that the steps taken by the "Employer", forgetting the aspect of knowledge, were not reasonable and feasible steps in regard to a heat hazard without the guidance of a heat standard. Accordingly, I find that the "Employer" was not in violation of Article 89, Section 32(a) of the Annotated Code of Maryland (1978 Supp.) as alleged.

On November 15, 1979, the Union (appellant), which was not a party to this litigation, filed a request for review with the Office of the Commissioner of Labor and Industry. Bethlehem Steel Corporation moved to dismiss the Union's appeal, arguing that the Union, having voluntarily waived its right to participate as a party at the hearing, could not now file exceptions to the hearing examiner's decision. A hearing was held on December 17, 1979, for purpose of oral argument on the issue of the Union's standing to appeal the decision. By letter dated January 8, 1980, the Commissioner denied the Company's motion to dismiss and invited written exceptions from the Union. Thereafter, the Union filed its exceptions to the findings of the hearing examiner and a memorandum in support thereof. The Company then filed its response to those exceptions.

By order dated May 21, 1980, the Commissioner reversed the hearing examiner's decision to vacate the citation. Instead, the Commissioner modified the citation and affirmed a finding of a "serious" violation of the "general

duty" clause of § 32 (a) of Article 89. The Commissioner imposed a civil penalty of $1,000, the maximum permitted by the statute.

On June 18, 1980, the Company filed a petition for review with the Circuit Court for Baltimore County, requesting review of the Commissioner's order and urging that the Commissioner's order be vacated on the ground that the Commissioner's findings and conclusions were unsupported by competent, material and substantial evidence as developed during the thirteen days of hearings. The Company specifically urged that reversal of the Commissioner's order was appropriate in that:

> (a) the Commissioner had misconstrued a "recognized hazard" within the meaning of the general duty clause; and (b) that the Commissioner's finding that the Company had not taken "adequate precautionary measures" or instituted a reasonable or feasible safety program to combat the hazard of heat, was unsupported by the competent, material and substantial evidence of record.

On July 28, 1981, a hearing was held in the Circuit Court for Baltimore County. Counsel for the Union, the Company, and MOSHA all participated.

On December 7, 1981, the trial judge issued an order wherein he reversed the judgment of the Commissioner and agreed with the hearing examiner's finding that based on extensive testimony and evidence of record there was no evidence to support affirmance of the MOSHA citation. Specifically, the trial judge pinpointed the essential language of the citation which charged that the Company "made no reasonable efforts by precautions or other means to furnish a safe workplace." The court stated that after reviewing the testimony and evidence, the Commissioner's determination that the Company "made no reasonable efforts" was not supported by substantial evidence of record. The Union then noted this appeal, asking us to consider whether the trial court erred by applying an improper and unconstitutional standard of review to the action of an

administrative agency so as to substitute its judgment for that of the Commissioner of Labor and Industry, who held that the appellee violated the general duty clause of Article 89, § 32 of the Maryland Code.

The Commissioner of Labor and Industry (hereinafter the "Commissioner"), is charged with the administration of that State Division. *See* Maryland Code (1957, 1979 Repl. Vol.) Art. 89, § 1. He is also charged with the prevention of occupational injuries and illnesses in the workplace with the purpose that every working man and woman may be assured safe and healthful working conditions. Maryland Code, Art. 89, § 28 (c); *see also J. I. Haas Co., Inc. v. Department of Licensing and Regulation, Division of Labor and Industry for Md.,* 275 Md. 321, 340 A.2d 255 (1975). The Commissioner is required to apply the specialized knowledge and expertise of his agency.

A court's review of the factual findings of an administrative agency and the application of the law to the facts are constitutionally circumscribed because such agencies are considered "arms of the legislature." *Mayor and Alderman of City of Annapolis v. Annapolis Waterfront Co.,* 284 Md. 383, 396 A.2d 1080 (1979). The Legislature has provided specifically for judicial review of any rule, standard or order of the Commissioner. *See* Maryland Code, Art. 89, § 38. Section 38 (a) provides in pertinent part as follows:

> The findings of the Commissioner with respect to questions of fact, supported by substantial evidence, shall be conclusive. The Court shall determine whether the . . . order is in accordance with law.

"Substantial evidence" has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Snowden v. City of Baltimore,* 224 Md. 443, 168 A.2d 390 (1961). The scope of review implicit therein is restricted to whether a reasonable mind could have reached the factual conclusion the agency reached. *Dickison-Tidewater, Inc. v. Supervisor of Assessments of Anne Arundel County,* 273 Md. 245, 329 A.2d 18 (1974).

In applying the substantial evidence test, the reviewing court may not substitute its judgment for the expertise of the administrative agency from which the appeal is taken. *Bernstein v. Real Estate Commissioner of Md.,* 221 Md. 221, 156 A.2d 657 (1959), *appeal dismissed,* 363 U.S. 419, 80 S.Ct. 1257, 4 L.Ed.2d 1515, *rehearing denied,* 364 U.S. 855, 81 S.Ct. 35, 5 L.Ed. 79 (1960). The court must review the agency's decision in the light most favorable to the agency as decisions of administrative agencies are *prima facie* correct, *Hoyt v. Police Commissioner of Baltimore City,* 279 Md. 74, 367 A.2d 924 (1977), and carry with them the presumption of validity. *Dickinson-Tidewater, Inc. v. Supervisor of Assessments of Anne Arundel County, supra.* Maryland Code, Art. 89, § 32 (a) is a general duty provision which supplements other promulgated safety standards. Section 32 (a) states:

> (a) Each employer shall (1) furnish to each of his employees employment and a place of employment which are safe and healthful as well as free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees, and (2) comply with the rules, regulations, standards and orders promulgated under this subtitle.

The law is clear, under both federal court precedents and the precedents of this jurisdiction, that to establish a violation of the so-called general duty clause, the State (or federal agency enforcing a federal law) has the burden of proving the three elements of a general duty clause violation: There must be a *hazard;* it must be a *recognized* hazard; and that recognized hazard must be *likely to cause death or serious physical harm.* To establish a violation of the general duty clause, all three of these elements must be established. *National Realty & Construction Co., Inc. v. OSHRC,* 489 F.2d 1257, 1265 (D.C. Cir. 1973); cited with approval in *J. I. Haas Co., Inc. v. Department of Licensing and Regulation, Division of Labor and Industry for Md., supra. See also Usery v. Marquette Cement Manufacturing Co.,* 568 F.2d

902, 909 (2d Cir. 1977); *Getty Oil Co. v. OSHRC,* 530 F.2d 1143, 1145 (5th Cir. 1976). Even then, a violation of the general duty clause cannot be sustained unless the State is able: (a) to establish the type of employer conduct necessary to avoid citation under similar circumstances; and (b) "to demonstrate feasibility and likely utility" of such conduct. *National Realty, supra,* 489 F.2d at 1289; *J. I. Haas Co., Inc., supra,* at 332.

The Commissioner in his determination and order dated May 21, 1980, made the following factual findings:

> To establish a violation of Section 32 (a), three essential elements must be proved: (1) that the employer failed to render its workplace free of a hazard which was (2) recognized and (3) causing or likely to cause death or serious physical harm.
>
> I find that there is substantial evidence in the record supporting a finding that the Employer maintained working conditions at the time and place alleged which constituted a recognized hazard affecting the safety and health of its employees. There can be no doubt on the record that the hazard of heat stress was recognized by the Employer.
>
> To constitute a recognized hazard, the dangerous potential of a condition must actually be known either to the particular employer or generally to the industry. Where industry practice fails to take reasonable precautions against hazards generally known in the industry, it may not be unfair to hold the employer to a standard higher than that of actual practice.

The Commissioner based this finding on the testimony of several witnesses. The record discloses that the appellee's director of the Medical Department at Sparrows Point acknowledged that heat stress was a problem recognized in the industry and at Bethlehem Steel since 1953. He agreed that it was a very serious potential hazard in the steel business. The Chief Industrial Hygienist for MOSHA testified

that danger of heat stroke from exposure to high temperatures was recognized as a hazard not only at Sparrows Point but throughout the entire steel industry.

The Commissioner further determined on May 21, 1980 that:

> [E]vidence submitted in this case is sufficient to establish that the hazard of heat stress is likely to cause death or serious injury. The facts, clearly show the death of one employee and serious physical injury to another arising from exposure to heat stress, are *prima facie* evidence that the hazard of heat stress could eventuate in death or serious physical harm.

*See Brennan v. OSHRC,* 494 F.2d 460 (9th Cir. 1974).

On the basis of his factual findings the Commissioner reversed and modified the findings and recommendation of the hearing examiner. It is from this action that the appellant filed its appeal to the Circuit Court for Baltimore County.

The trial judge found that the Commissioner had caused a citation to be issued to the Bethlehem Steel Co. The court stated that "[b]y affirming the citation (pursuant to Subsection (e) of Section 37 of Article 89 of the Code) the Commissioner found it to be a fact that the Company made no reasonable effort to eliminate the hazard of heat from the workplace. There is no evidence to support such a finding. The trial judge concluded "that the finding by the Commissioner of Labor and Industry is not supported by substantial evidence, and is not conclusive, and accordingly, it should be reversed, and the civil penalty reversed as well." We agree with the result reached by the trial court.

Initially, from our own reading of the record, we are satisfied that there is substantial evidence to establish that the hazards of heat stress and heat illness were recognized hazards in the employer's workplace which could cause or were likely to cause death or serious physical harm to the employees. The remaining issue in the case was whether

under the general duty clause the State was able to establish by substantial evidence the failure of the employer to utilize such feasible efforts as would be required to excuse the failure of the employer to render its workplace free of the hazard. *National Realty and Construction Co., Inc., supra,* at 1289. Implicit in the Commissioner's determination was that the employer's safety program concerning heat stress was inadequate "as indicated by the death of one employee and serious physical harm of another." The uncontradicted evidence, however, as revealed by the record, was that the Company's safety program was one of the best in the country and was used as a model for the basic metal industry. MOSHA failed to suggest at any time during the course of the hearing any specific safety measure by the utilization of which Bethlehem Steel might have avoided citation. One suggestion by the State was that Bethlehem Steel should have *forced* its employees, under penalty of discipline, to sit in the various cool-off rooms supplied by the Company for some unspecified time every hour or so and to drink plenty of fluids.

MOSHA's chief witness, Dr. O'Neil Banks, testified that the Company had an obligation to transfer employees who have physical conditions which predispose them to heat stress to jobs which entail less heat exposure. On cross-examination, Dr. Banks also suggested that the Company should have conducted (1) more regular determinations of the radiant, convective, and metabolic heat loads of the employees; (2) determination of the extent to which employees accumulated heat within their bodies resulting in an elevation of body temperature; and (3) scientific determinations as to how many minutes an employee can work under those circumstances before his body temperature becomes elevated to the level that he must cool off. All of these suggestions, however, must be treated as hindsight rather than foresight.

There is nothing in the record to indicate that any of these precautions were suggested or required as a result of more than 130 regular inspections by MOSHA or its employees. To the contrary, the record indicates that the Company's

safety program was rated "effective." MOSHA has offered no evidence that the detailed recommendations of Dr. Banks have been adopted as standard by other steel companies or any other employer.

The appellant Union has also included in its brief a list of complaints concerning Bethlehem Steel's failure to take certtain precautions which it suggests were required in order to meet MOSHA's standards of employee safety. The appellant, however, has been unable to direct our attention to any rule or regulation by MOSHA which would have contemplated the proposed safety measures.

The Commissioner has grounded his decision on the general duty clause. In several recent decisions, the federal courts and the Occupational Safety and Health Review Commission have criticized the use of the general duty clause as a means of imposing higher standards of conduct upon an employer whose conduct otherwise conforms to the common industry practice. In *B & B Insulation, Inc. v. OSHRC,* 583 F.2d 1364 (5th Cir. 1978), the United States Court of Appeals reversed the Occupational Safety and Health Review Commission's finding that an employer had violated the construction industry equivalent of the general duty clause where it stated:

> [T]he employer whose activity is not yet addressed by a specific regulation and whose conduct conforms to the common practice of those similarly situated in his industry should generally not bear an extra burden.
>
> Where the Government seeks to encourage a higher standard of safety performance from the industry than customary industry practices exhibit, the proper recourse is to the standard-making machinery provided in the Act, selective enforcement of general standards being inappropriate to achieve such a purpose. [583 F.2d at 1371] [Footnotes omitted].

In *S & H Rigger and Erectors, Inc. v. OSHRC,* 659 F.2d 1273 (5th Cir. 1981), the Court stated that:

Due process mandates that an employer receive notice of the requirements of any OSHA regulation before he is cited for an alleged violation. . . . Many, if not most, of the regulations promulgated under OSHA are sufficiently specific concerning the circumstances in which safety precautions must be taken that adequacy of notice is not a significant problem. The generality of [the construction industry general duty clause], however, mandates that it be applied only in such a manner that an employer may readily determine its requirements by some objective, external referent. [659 F.2d at 1279-1280] [Footnote omitted].

We are, of course, aware of Section 38 (a) of Article 89 which makes the findings of the Commissioner conclusive with respect to questions of fact *supported by substantial evidence.* The statutory violation for which the Company was cited and fined is that the Company "made no reasonable efforts" by precautions or otherwise to eliminate the hazardous condition due to excess heat. It is conceded by MOSHA that the Company did make some efforts but the Commissioner in his finding reversing the recommendation of the hearing examiner recommending that the citation issued to the Company be vacated, found as a fact that the Company had not taken adequate precautionary measures or instituted a reasonable or feasible safety program to combat the hazard of heat.

We have carefully considered the record in this case and while we recognize that we have no right to substitute our judgment for that of the Commissioner, we have concluded as did the trial judge below that there was no substantial evidence to support his findings of fact. The evidence shows that the employer furnished cool-off rooms, water fountains, salt tablets and issued forceful and regular reminders of the hazards of heat exposure. In light of the evidence that these precautions were well within the limits of those adopted by other companies in the industry, we conclude that the standards proposed under the general duty clause

amounted to an afterthought. In the absence of the adoption of any regulation or rule, we find that the exaction of these standards under the circumstances would be arbitrary and unreasonable.

*Judgment affirmed.*
*Costs to be paid by appellant.*