623 A.2d 717

Pinkie M. STROTHER, et al.

v.

BOARD OF EDUCATION OF HOWARD COUNTY.

No. 1074, Sept. Term, 1992.

Court of Special Appeals of Maryland.

April 30, 1993.

James R. Whattam (Walter S. Levin, on the brief), Baltimore, for appellants.

Charles A. Reese (Reese and Carney, on the brief), Columbia, for appellee.

Argued before ROSALYN B. BELL *, WENNER and HARRELL, JJ.

HARRELL, Judge.

Appellants, public school teachers, seek reversal of a determination by the Maryland State Board of Education (the State Board), which was affirmed by the Circuit Court for Howard County, that appellants' challenges to unfavorable classroom observation reports were not appealable. In so doing, they present us with a single issue: "[D]id the trial court err in

---

* BELL, J., participated in the hearing of this case and the conference in regard to its decision, but retired from the Court prior to the filing of the Opinion.

holding that the State Board inferentially ruled that classroom observation report disputes were not 'controversies and disputes' under Section 4–205(c) of the Education Article, even though the State Board plainly held that such matters were covered by Section 4–205(c), but were not further appealable under Section 4–205(c)(4)?" [1]

## FACTS

Appellants, Pinkie M. Strother, Melvin Ganoe, and Dale Radcliffe, are teachers employed by the appellee, the Board of Education of Howard County (the County Board). During the 1987–88 school year, each of the appellants received a written performance report from one of their superiors. Each of these reports, called an "Observation Report", contained the supervisor's view of the performance of the teacher on a given day. Typically, a number of such observation reports are completed during a school year and subsequently lead to the completion of a year-end evaluation report on the employee. In each of these cases, the conclusions of the observation report received by each appellant was less than satisfactory as to his or her performance on that day. In accordance with the terms of the then-applicable collective bargaining agreement between the County Board and the Howard County Education Association (which was the collective bargaining agent representing teachers in Howard County), each of the appellants filed a grievance concerning his or her observation report. The grievances were processed through each of the lower levels of the grievance procedure and were poised at the brink of the ultimate level of final and binding arbitration.

At that point, the County Board sought and received an order from the circuit court staying the arbitration proceedings pending exhaustion by the appellants of their administrative remedies before the State Board. Pursuant to this circuit court order, appellants initiated an appeal to the State Board seeking a determination as to whether, under applicable State

---

1. Unless indicated to the contrary, all statutory references are to the Maryland Code (1992 Repl.Vol.), Education Article.

collective bargaining law, observation report disputes could be the subject of negotiations between a local board of education and a teachers association, and, if so, whether such disputes could be subjected to arbitration. On the day that appellants noted their appeal to the State Board, the State Board issued an opinion in an unrelated case (MSBE 88–5), wherein it held that observation report disputes were not lawful subjects of negotiations or arbitrations under the collective bargaining law for teachers because they are a matter of educational policy.

Relying on the State Board's decision in MSBE 88–5, the County Board moved, in effect, to dismiss appellants' cases. Appellants' counsel urged the State Board to remand the cases to the County Board for a review of the Superintendent's decisions[2] upholding the "unsatisfactory" observation reports. The County Board opposed remand on two grounds: the thirty day appeal period from a Superintendent's decision to a county board, pursuant to § 4–205(c), had expired, and the dispute was moot since the appellants had each received satisfactory year-end personnel evaluations, despite the challenged classroom observation reports.

As is the practice of the State Board, the case was referred to one of its Hearing Examiners, Mitchell J. Cooper, Esquire, for the taking of evidence, oral argument, and the rendering of a written recommendation as to findings of fact, conclusions of law, and a decision. Examiner Cooper, in ruling against the County Board's arguments, determined, in pertinent part, as to each argument respectively:

"Here, at the time of their appeal, appellants exercised their legal right to have the State Board act in accordance with a decision of the Court of Appeals requiring the exhaustion of administrative remedies. That appeal was brought in timely fashion in pursuit of an option provided by the parties'

---

**2.** In actuality, it was a Deputy Superintendent who ratified the classroom observation reports involved. The parties have consistently treated the Deputy's decision as that of the Superintendent. We do not mean to question that situation here.

collective bargaining agreement. Neither party had cause to know that the Board would invalidate that option. To hold, under these circumstances, that appellants have no right to any review of the merits of their "unsatisfactory" observations would have the effect of cutting short, as a penalty for exercising a presumably legal option, the due process to which the appellants are entitled.

\* \* \* \* \* \*

Nor can I accept Respondent's [County Board's] view that this case was mooted by the fact that each of the appellants received a "satisfactory" rating at the end of the year in which the "unsatisfactory" observations were recorded. So long as those observations remain in appellants' personnel files, they will pose some risk to the professional future of each of these teachers. That risk may be a warranted and justifiable one, but appellants have the right to have that question determined by the local school board *and, if necessary, by a subsequent appeal to the State Board.*

In short, I conclude that although the issue of negotiability and arbitrability of classroom observations has been resolved by the State Board's decision in the earlier Howard County case (88–5), it was neither frivolous nor irresponsible of appellants to seek the administrative remedy urged by the Court some hours before the Board decided the issue. Under these circumstances, it would be inequitable to find that appellants, by pursuing a legally appropriate course of action, deprived themselves of their right to any appeal of the appropriateness of their "unsatisfactory" observations.

Accordingly, I find that these consolidated cases should be remanded to the Howard County Board of Education for a determination of whether the Deputy Superintendent of Schools acted properly in approving the "unsatisfactory" observations of appellants." (emphasis supplied)

On 10 November 1988, the State Board adopted the Examiner's ruling as its own decision, without modification.

Hearings on appellants' cases before the County Board were finally held on 3 August 1989. By simultaneous written decisions dated 20 October 1989, the County Board determined as a preliminary matter that classroom observation reports such as those involved in these cases were "not a decision made nor a controversy or dispute under Section 4–205(c) of the Education Article and, therefore, in our opinion, not appealable." The County Board then went on to address the merits of each of the disputes and ruled that, even if they were appealable issues, they would have supported the Superintendent in upholding each of the observation reports.

The appellants then filed timely appeals with the State Board in accordance with Section 4–205(c)(4) of the Education Article. The State Board again referred the matter to Examiner Cooper. By written report, dated 21 March 1990, he recommended to the State Board that it reject the argument of the County Board that observation report disputes were not "decisions" or did not constitute a "controversy or dispute" under Section 4–205(c).[3] The Examiner explained:

"The acceptance of Respondent's arguments would mean that Appellants have no right to a county board and State Board review of a Superintendent's decision. That right of

---

3. **Section 4–205. Powers and duties of county superintendent.**

  *   *   *   *   *   *

(c) *Interpretation of law; controversies and disputes.*

(1) This subsection does not apply to Baltimore City.

(2) Subject to the authority of the State Board under § 2–205(e) of this article, each county superintendent shall explain the true intent and meaning of:

(i) The school law; and

(ii) The applicable bylaws of the State Board.

(3) Subject to the provisions of § 6–203 and Subtitle 4 of Title 6 of this article and without charge to the parties concerned, each county superintendent shall decide all controversies and disputes that involve:

  (i) The rules and regulations of the county board; and

  (ii) The proper administration of the county public school system.

(4) A decision of a county superintendent may be appealed to the county board if taken in writing within 30 days after the decision of the county superintendent. The decision may be further appealed to the State Board if taken in writing within 30 days after the decision of the county board.

review was the very question before the State Board when it considered the original appeal from these teachers in *Pinkie M. Strother, et al. v. Board of Education of Howard County* (88–18), where the Board remanded the consolidated cases to the local board for a determination of whether the "unsatisfactory" observations were proper.

Respondent seems to be suggesting that the State Board either did not call for a review of the merits of the Superintendent's decision or, if the State Board did mandate such a review, it should now reconsider its previous decision. Despite Respondent's protestations to the contrary, an unsatisfactory observation does, as I pointed out in my Ruling in 88–18, pose sufficient risk to a teacher to raise it to the level of a dispute or controversy, and a Superintendent's ruling on such an observation does constitute a "decision." Indeed, in the course of Respondent's counsel's argument before me I raised the following question: 'The Superintendent or his agent presumably isn't rubber-stamping ... but does have a degree of discretion as to whether he would agree with a professional judgment of an observation or not. Is that accurate?' Counsel replied: 'Yes, I think you'd have to say that if the Superintendent disagreed with one of the professional assistants he could perhaps exercise that discretion.' Surely, such a right to approve or disapprove is the equivalent of the authority to decide.

Further, Respondent's counsel pointed out that classroom observations take place pursuant to procedures adopted by the County Board. Such observations thus are encompassed in the 4–205 provision that the County Superintendent shall decide controversies involving 'the rules and regulations' of the County Board."

On 31 October 1990, the State Board issued a written opinion that modified the Examiner's recommendation, and which, despite its 10 November 1988 ruling, held "that disputed classroom observations are not appealable under Section 4–205(c)(4) of the Education Article." In the course of so doing, the State Board noted:

"We believe the classroom observation report is a school-based function, and its review should be limited. The efficient operation of the school system requires that disputes with classroom observations have a prompt resolution at the school level. We therefore hold that disputed classroom observation reports may be appealed only to the local superintendent whose decision on the matter is final. *See Lendo*[4] cited above. For these reasons, we find that the disputed classroom observation reports do not fall under the purview of Section 4–205(c)(4) of the Education Article."

It concluded by granting the County Board's motion for summary affirmance of its decision, without discussion of the merits of the underlying complaints as to the observation reports.

Appellants appealed to the circuit court. The only issue presented to the circuit court was appellants' contention that the State Board erred in its interpretation of § 4–205(c)(4). In its 10 June 1992 Memorandum and Order affirming "the decision of the State Board of Education in Opinion 90–18", the circuit court stated its view of what the State Board determined as follows:

"In this case the State Board took the opportunity presented by this appeal to exercise its authority to explain the true intent and meaning of this article [Section 2–205(e)(1) ][5] and to interpret the 'controversies and disputes'

---

4. *Board of Educ. of Garrett County v. Lendo*, 295 Md. 55, 453 A.2d 1185 (1982).

5. **Section 2–205.  Powers and duties.**
 \*     \*     \*     \*     \*     \*
 (b) *Determination of policies and administration of article*—The State Board shall:
  (1) Determine the elementary and secondary educational policies of this State;
 \*     \*     \*     \*     \*     \*
 (e) *Explanations of law; controversies and disputes.*—
  (1) Without charge and with the advice of the Attorney General, the State Board shall explain the true intent and meaning of the provisions of:
   (i) This article that are within its jurisdiction;  and

provision of Section 4–205(c)(3) as *not* including challenged classroom observation reports.

$$* \qquad * \qquad * \qquad * \qquad * \qquad *$$

Implicit in the State Board Opinion is a finding that classroom observation reports: (1) do not involve rules and regulations of the county board, and (2) do not involve the proper administration of the county public school system. [Section 4–205(c)(2)(i) and (ii) ].

$$* \qquad * \qquad * \qquad * \qquad * \qquad *$$

Consequently, the broad powers extended to the State Board in Section 2–205(e) to explain the true intent and meaning and to decide all controversies and disputes, necessarily circumscribe the scope of judicial review of State Board decisions.

 The Appellants' Petition in Support of Order for Appeal and Rule B12 Memorandum simply urge that all matters decided by a county superintendent are appealable to the county board and eventually to the State Board by virtue of the language of Section 4–205(c)(4). No specific arguments are presented that address the authority or appropriateness of the State Board's interpretation of the intent and meaning of 'controversies and disputes.' " (citation omitted) (footnote added).

Appellants took a timely appeal from the judgment of the circuit court.

## *STANDARD OF REVIEW*

Section 10–215 of the State Government Article, governing both our review and that of the circuit court in cases such as the one *sub judice*,[6] provides in pertinent part:

---

(ii) The bylaws, rules, and regulations adopted by the Board.
(2) The Board shall decide all controversies and disputes under these provisions.
(3) The decision of the Board is final.

**6.** Although the County Board would not be considered a State agency for purposes of applying the State Administrative Procedure Act to judicial review of its decisions, pursuant to Bernstein v. Board of Educ.

(g) *Decision.*—In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the decision of the agency; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the agency;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

Md. State Gov't Code Ann. § 10–215(g) (1984).

In an appeal from the decision of an administrative agency, we apply one standard of review to the factual conclusions reached by the agency and a different one to its legal interpretations. We may reverse or modify the agency's decision if it is unsupported by competent, material, and substantial evidence in light of the entire record as submitted. *Andre v. Montgomery County Personnel Bd.*, 37 Md.App. 48, 61–62, 375 A.2d 1149 (1977). The principles that guide our application of the substantial evidence test were elucidated by the Court of Appeals in *Bulluck v. Pelham Wood Apartments*, 283 Md. 505, 390 A.2d 1119 (1978):

"Substantial evidence," as the test for reviewing factual findings of administrative agencies, has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." The scope of review "is limited 'to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.'"

---

of Prince George's County, 245 Md. 464, 471–73 (1967), the State Board's decision, as a State agency, is not specifically excluded from the application of the Act.

In applying the substantial evidence test, we have emphasized that a "court should [not] substitute its judgment for the *expertise* of those persons who constitute the administrative agency from which the appeal is taken." We must also review the agency's decision in the light most favorable to the agency, since "decisions of administrative agencies are *prima facie* correct," and "carry with them the presumption of validity." Furthermore, not only is it the province of the agency to resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences.

283 Md. at 512–13, 390 A.2d 1119 (citations omitted) (alteration in original).

Adding the standard of review of the agency's legal conclusions to this deferential standard for review of the factual conclusions of the agency, we achieve the consolidated standard discussed in *Comptroller of the Treasury v. World Book Childcraft Int'l, Inc.*, 67 Md.App. 424, 508 A.2d 148, *cert. denied*, 307 Md. 260, 513 A.2d 314 (1986). In that case we relied on the Court of Appeals' ruling in *Ramsay, Scarlett & Co. v. Comptroller of the Treasury*, 302 Md. 825, 490 A.2d 1296 (1985), to set forth the following threefold analysis for the guidance of reviewing courts:

1. First, the reviewing court must determine whether the agency recognized and applied the correct principles of law governing the case. The reviewing court is not constrained to affirm the agency where its order 'is premised solely upon an erroneous conclusion of law.'

2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factual findings to determine if they are supported by substantial evidence, i.e., by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. At this juncture, the *Ramsay, Scarlett* court reminds us that 'it is the agency's province to resolve conflicting evidence, and, where inconsistent inferences can be drawn from the same evidence, it is for the agency to draw the inference.[']

3. Finally, the reviewing court must examine how the agency applied the law to the facts. This, of course, is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is 'whether ... a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles].'

*World Book,* 67 Md.App. at 438–39, 508 A.2d 148 (citations omitted) (alterations in original).

We are at the same time mindful of the heightened deference accorded by reviewing courts to the State Board's interpretations of the public education law. *Montgomery County Ed. Ass'n v. Bd. of Educ. of Montgomery County,* 311 Md. 303, 309–10, 534 A.2d 980 (1987). With all of these principles in tow we shall consider appellants' contention.

### *ANALYSIS*

■ It seems to us that the circuit court in the case *sub judice* succumbed to a legal error in its analysis of the State Board's decision comparable to ours in reviewing a decision by the Maryland Commissioner of Labor and Industry in *United Steelworkers of Am. AFL–CIO Local 2610 v. Bethlehem Steel Corp.,* 53 Md.App. 366, 454 A.2d 850 (1983), *vacated and remanded,* 298 Md. 665, 472 A.2d 62 (1984). In the course of our substantial evidence analysis of the Commissioner's decision in *Bethlehem Steel,* we gleaned findings from the record that we attributed as "implicit in the Commissioner's decision." *Id.,* 53 Md.App. at 375, 454 A.2d 850. The Court of Appeals, in the process of vacating our affirmance of the Commissioner's decision, reiterated the differences in the analyses to be performed by an appellate court when reviewing the decision of an administrative agency and that to be applied to a trial court judgment:

Judicial review of administrative action differs from appellate review of a trial court judgment. In the latter context the appellate court will search the record for evidence to support the judgment and will sustain the judg-

ment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency.

298 Md. at 679, 472 A.2d 62 (citations omitted).

██ The circuit court in the case *sub judice,* whose role in reviewing the State Board's decision is no different than our own, twice committed the same error as did we in *Bethlehem Steel.* First, the circuit court read the State Board's decision as interpreting the 'controversies and disputes' provision of Section 4–205(c)(3) as *not* including challenges to classroom observation reports, when, in fact, the State Board made no such determination. To the contrary, the State Board's holding was focused on interpreting Section 4–205(c)(4) in a manner that limited appeals from classroom observation reports to the level of the local superintendent. Second, following from its view that the State Board had interpreted Section 4–205(c)(3) in the manner indicated, the circuit court attributed to the State Board "implicit" findings that the classroom observation reports did not involve rules and regulations of the county board or the proper administration of the county public school system as set forth at Section 4–205(c)(3)(i) and (ii) [7]. It is apparent from our review of the record that the County Board did make such arguments to both the State Board and the circuit court; however, the State Board apparently did not, in its decision, rely on such arguments in reasoning to its decision. We limit ourselves to the actual findings and reasons advanced by the administrative agency in support of its decision. *Bethlehem Steel,* 298 Md. at 679, 472 A.2d 62. Having discarded, therefore, those portions of the circuit court's effort to supply additional reasoning in support of the State Board's decisions, we shall turn to an analysis of the actual reasons given by the State Board.

---

7. The circuit court's Memorandum And Order of 10 June 1992 incorrectly attributes these "findings" to Section 4–205(c)(2)(i) and (ii).

All parties to this appeal urge us to interpret what the Court of Appeals meant in *Board of Educ. of Garrett County v. Lendo,* 295 Md. 55, 453 A.2d 1185 (1982) when it said that "[i]t does not follow insofar as decisions of county superintendents are concerned that all such decisions are appealable matters." 295 Md. at 65, 453 A.2d 1185. In *Lendo,* a teacher who was protesting one aspect of an otherwise favorable annual performance evaluation was denied an appeal by the State Board from his local superintendent's and local board's actions in upholding the evaluation. Lendo asserted that any appeal taken to the State Board under § 4–205(c) must be heard and considered by the State Board. The local board contended that it had discretion whether to consider any appeal that did not present a controversy and dispute concerning a public school law in the Education Article or a State Board bylaw.

The Court of Appeals held in *Lendo* "that the State Board of Education is obliged to decide appeals to it from county boards of education under the provision of Maryland Code (1978) § 4–205(c)(4), Education Article." *Id.* at 57, 453 A.2d 1185. The dictum in *Lendo* that the parties to the instant appeal ask us to divine appears in the following context where the Court is addressing the mandatory nature of the appeal rights granted by the language of § 4–205(c):

The language here used provides an option to a party aggrieved as to whether he will or will not appeal the matter. The option is not to the adjudicatory body, the State Board of Education. Maryland statutes abound with provisions to the effect that a party deeming himself aggrieved by a decision "may appeal." All parts of the Education Article must be read together for the purpose of interpretation of the right granted in § 4–205. To hold that the State Board of Education has the discretion as to whether it shall or shall not hear the appeal in this instance would be to insert words into the statute, which we are not permitted to do. The argument that this will place a tremendous workload on the State Board of Education, that the number of appeals will create fiscal problems, and that

the county superintendents collectively make hundreds of decisions each day do not override the plain meaning of the statute which it is our duty to interpret. The workload of the State Board and the fiscal implications are problems for the General Assembly. *It does not follow insofar as decisions of county superintendents are concerned that all such decisions are appealable matters.* (emphasis supplied.)

295 Md. at 64–65, 453 A.2d 1185.

The appellee in the case *sub judice* asserts that the State Board, by invoking its power under § 2–205(e) and mindful of the pertinent dictum in *Lendo,* has articulated a sound educational policy rationale why appeals from classroom observation reports should be limited to the action by the local superintendent and not, as § 4–205(c)(4) provides, to the County Board and the State Board. This rationale is premised on the concept that such reports are primarily intended to facilitate quality classroom performance by teachers so as to benefit the students, not as a supervisory tool for the administration to manage its teachers. As such, they are school-based functions best resolved promptly "at the school level." This, concludes the State Board, militates against disputes involving such reports rising to the level of a county-level, let alone state-level, concern for which the appellate process afforded by § 4–205(c)(4) should be available. We have no opinion as to the reasonableness of the State Board's justification because it is, in the first instance, its job to explain the educational policy of the State. To us, however, the fundamental logic of the State Board's explanation suffers from the same flaw as was identified by the Court of Appeals in *Lendo.* It is also fraught with an internal inconsistency that dooms its affirmance.

The Court of Appeals in *Lendo* relied on a portion of an amicus brief filed by the Maryland State Teachers Association, Inc. as best explaining the interplay between §§ 2–205 and 4–205:

"1. § 2–205 was intended by the General Assembly as a grant of *original* jurisdiction to the State Board, such

that, in the limited instances enumerated in that section, a litigant could go directly to the State Board for a decision without the need for exhausting any lower administrative remedies. Since the category of cases involved deal primarily with statewide issues (i.e., statutes and/or by-laws applicable to *all* county boards of education), no useful purpose would be served by *requiring* a lower level administrator or agency to decide a question of statewide applicability.

"2. § 4–205, on the other hand, vests the State Board with *appellate* jurisdiction over the types of cases therein set forth.

"Thus, in the instances of a case requiring an explanation of the 'true intent and meaning' of a provision of the Education Article or a State Board bylaw, a litigant has the choice of either going first to the county superintendent under ˚§ 4–205 and then on up the appellate ladder, or going directly to the State Board under § 2–205. In this regard, it is important to note that § 4–205(c)(2) states that the county superintendent's obligation to explain the true intent and meaning of the school law is '[s]ubject to the authority of the State Board under § 2–205(e)....' " (Emphasis in original.)

295 Md. at 65–66, 453 A.2d 1185.

Concluding that the State Board was required to hear Lendo's appeal, the Court indicated the consistency of this holding with its prior opinion in *Hunter v. Board of Educ. of Montgomery County,* 292 Md. 481, 439 A.2d 582 (1982) where in it had stated:

"[S]ection 4–205(c)(3) of the Education Article commands that each county superintendent, 'without charge to the parties concerned ... shall decide all controversies that involve: (i) [t]he rules and regulations of the county board; and (ii) [t]he proper administration of the county public school system,' with the decision being appealable to the county board and then to the state board of education, § 4–

205(c)(4), and further, if appropriate, to the courts through the administrative procedure act ..." (citations omitted). 292 Md. at 488–89, 439 A.2d 582.

As we noted *infra*, the circuit court, but not the State Board, attempted to rationalize that disputes over classroom observations did not rise to the level of a "controversy or dispute" within the meaning of § 4–205(c)(3). We agree with the appellants' contention that such an analysis is the only one that can give reasonable meaning to the dictum in *Lendo* and the language of § 4–205(c). Unfortunately for the State Board, that is not how it explained the reasons for its decision in the instant cases.

██ Even were we or the circuit court permitted to rehabilitate the State Board's decision by reading into it reasoning not made explicit by the administrative agency, it would be a vain effort due to the inherent inconsistency in the State Board's decision. The State Board found that a disagreement concerning a classroom observation report was, even though a "school-based function", worthy of a limited appeal from the evaluator's report to the local superintendent. The State Board thus necessarily implicated § 4–205(c)(3), which in turn gives rise to the full appellate opportunities provided in § 4–205(c)(4). Indeed, appellee argued forcefully before the State Board the many ways in which the classroom observation report process implicates not only "county board policy and practice", but §§ 4–205(e), (g), and (h), 5–401, 5–402, and 6–202 of the Education Article. It is difficult, therefore, to conceive of a legitimate argument that the local superintendent's action in an appeal from a unfavorable classroom observation report does not constitute a decision of a controversy or dispute involving the school law, the rules and regulations of the county board, or the proper administration of the county public school system.

We find our decision in *Elprin v. Howard County Bd. of Educ.* 57 Md.App. 458, 470 A.2d 833, *cert. denied*, 300 Md. 88, 475 A.2d 1200 (1984), filed after *Lendo*, to be instructive. In *Elprin*, parents filed an appeal to the State Board from the

County Board's decision to close and consolidate certain schools in Howard County. The authorities relied on by the parents for their right to appeal to the State Board were a State Board bylaw governing school closings and §§ 2–205 and 4–205 of the Education Article. After receiving an unsatisfactory decision from the State Board, the parents appealed further to the circuit court on the theory that it could review the State Board's action as a "contested case" within the meaning of that phrase in the Maryland Administrative Procedure Act (APA), Article 41, § 244, *et seq.* The county board raised a preliminary objection, which the circuit court granted, that jurisdiction to review the agency decision was lacking since it was not a "contested case" within the ambit of the APA. We affirmed the circuit court.

In disposing of the parents' alternative appellate argument that § 4–205(c)(4) required the State Board to review the county board's decision, we said:

Our reading of the section does not substantiate this argument. Section 4–205(c)(4) states as follows:

A decision of a county superintendent may be appealed to the county board if taken in writing within 30 days after the decision of the county superintendent. The decision may be further appealed to the State Board if taken in writing within 30 days after the decision of the county board.

The mandatory obligation of the State Board of Education to hear appeals under this section as indicated by the Court of Appeals in *Board of Education of Garrett County v. Lendo,* 295 Md. 55 [453 A.2d 1185] (1982), is limited to matters arising within the authority of and decided by a county superintendent. Appellants acknowledge that in this case the County Superintendent merely made a recommendation to the State Board for its consideration and no appeal was taken from a decision of the School Superintendent. *Board of Education of Garrett County v. Lendo, supra,* is inapplicable to the case at bar because it does not apply to consolidation and closure decisions of the State Board, nor does it constitute a controversy or dispute within the mean-

ing of Section 4–205(c). Even if we assume, *arguendo*, that the action of the County Superintendent in making a recommendation was equivalent to a decision under Section 4–205(c) and that the State Board would then be required to hear the appeal, the proceeding would remain quasi-legislative in nature and would not by reason of the hearing before the Board be converted into a "contested case" appealable under the APA. (internal citation altered).

57 Md.App. at 466–67, 470 A.2d 833 (internal citation altered).

In the instant appeal, the State Board determined that the resolution of disputes involving classroom observation reports are within the authority of and to be decided by the local superintendent. The County Board and appellants have made no claim that this determination is clearly erroneous or otherwise in error. It follows then that the superintendent's decision is appealable by the affected teacher to the County Board and the State Board pursuant to *Lendo*'s interpretation of § 4–205(c)(4). To give rational effect to the dictum in *Lendo*, that not all decisions of a local superintendent are necessarily appealable, there must be a determination by the State Board that the matter at issue decided by the local superintendent does not rise to the level of a "controversy or dispute" within the meaning of § 4–205(c).[8]

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY VACATED; CASE REMANDED TO THE CIRCUIT COURT WITH DIRECTIONS THAT IT REVERSE THE DECISIONS OF THE MARYLAND STATE BOARD OF EDUCATION AND REMAND THESE AP-**

---

8. Because of our holding, *supra*, we do not consider whether to confront an unbriefed and unargued concern of ours as to whether the State Board's deviation in its 31 October 1990 decision from its 10 November 1988 decision on this same issue and involving an unchanged set of relevant facts was impermissibly arbitrary and capricious or collaterally estopped. See *Batson v. Shiflett*, 325 Md. 684, 701–08, 602 A.2d 1191 (1992); *Montgomery County v. Anastasi*, 77 Md.App. 126, 137–39, 549 A.2d 753 (1988); *Department of Health & Mental Hygiene v. Reeders Memorial Home, Inc.*, 86 Md.App. 447, 453–55, 586 A.2d 1295 (1991); *Eaton v. Rosewood Center*, 86 Md.App. 366, 374–76, 586 A.2d 804 (1991).

PEALS TO THE STATE BOARD FOR CONSIDERATION
OF THE MERITS; COSTS TO BE PAID BY APPELLEE.