637 A.2d 469

MARYLAND AVIATION ADMINISTRATION

v.

R. Wayne NEWSOME.

No. 1952, Sept. Term, 1992.

Court of Special Appeals of Maryland.

Feb. 23, 1994.

Janice G. Salzman, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Louisa H. Goldstein, Asst. Atty. Gen., on the brief) BWI Airport, for appellant.

Howard L. Alderman, Jr. (Levin and Gann, P.A., on the brief) Towson, for appellee.

Argued before GARRITY, FISCHER and DAVIS, JJ.

DAVIS, Judge.

Appellant, Maryland Aviation Administration (MAA), appeals from a decision of the Circuit Court for Anne Arundel County, reversing the Maryland Department of Transportation Board of Airport Zoning Appeals (Board or BAZA), which denied appellee, R. Wayne Newsome (Newsome), a variance to permit the construction of twenty-seven houses in the Lennox Park subdivision of Howard County, Maryland. The MAA opposed the granting of the variance on the basis that the proposed increase of twenty-seven residences and sixty-eight people would increase the population density within the Airport Noise Zone and appellant did not foresee a decline in future aircraft noise in the Lennox Park area. The reasons given for the Board's denial of the variance were that

(1) the property in question was in the Airport Noise Zone in the 65–70 Ldn [1] and 70–75 Ldn noise contour;

(2) airport noise is not estimated to decrease because of increased west operations from BWI Airport;

(3) the number of persons who would be affected by high levels of noise was estimated to be about sixty-eight, and the density of the proposed individual building lots would

---

1. Day-night average sound level.

be substantially greater than the low density developed in the surrounding residential community.

A motion for reconsideration filed by appellee was denied.

Appellee appealed the Board's decision to the Circuit Court for Anne Arundel County, which reversed the Board's decision. Appellant filed this appeal from the decision of the circuit court.

On this appeal, appellant asks:

(1) Whether the Board's decision to deny appellee a variance was fair and reasonable and supported by competent, material, and substantial evidence in the administrative record.

(2) Whether the Board's decision to deny appellee a variance exceeded the statutory authority or jurisdiction of the agency.

(3) Whether the Board's decision to deny appellee a variance was affected by an error of law.

We restate the issues raised by appellant as follows:

(1) Whether the determination by the circuit court that the Board exceeded its authority in considering the increase in density was purely a question of law; and

(2) Assuming the lower court decided a question of law, whether the court was correct in deciding that the Board exceeded its authority.

## FACTS

Pursuant to Md.Transp.Code Ann., § 5–804,[2] the Maryland Aviation Administration (MAA) establishes limits for noise exposure for residential and other land uses. MAA has set 65 Ldn as the maximum noise level for residential development, which standard is the same maximum noise level established by the Federal Aviation Administration and the Environmental Protection Agency. Requests for variances by applicants

---

**2.** All subsequent statutes in this opinion, unless otherwise noted, refer to the Transportation Article of the Maryland Annotated Code.

who desire to live or build in the Airport Noise Zone in areas in excess of 65 Ldn must be presented to the Board, which is given discretion to grant or deny a variance concomitant with its obligation to prevent new noise problems and protect the health and general welfare of the occupants of the land near airports. When a variance is granted by the Board, the applicant may be issued a building permit by the appropriate county agency.

Appellee proposed to construct twenty-seven single family dwellings on twenty-seven undeveloped lots he owned in the Lennox Park subdivision of Howard County. The subject property is zoned R–12 with the exception of three lots that extend into an area zoned as M–2 industrial. Abutting the east side and the north side of the subject property is an existing Lennox Park residential community of approximately fifty houses, and undeveloped property borders the west side of the property. Appellee's lots range in size from 7,500 to 12,000 square feet; the dwellings located in the existing residential community are situated on multiple lot sites.

The subject property is located within both the 65–70 Ldn and 70–75 Ldn noise contours, the 70 Ldn contour running through the middle of the subject property and the more easterly lots being located in the 70–75 Ldn noise contour of the zone, subject to a noise exposure level of approximately 70 Ldn. More westerly lots are subject to a noise exposure level of approximately 69 Ldn.

An average of 2.5 persons would reside in each of the twenty-seven homes to be constructed, resulting in sixty-eight additional persons residing on 6.3 acres in the Airport Noise Zone. The subject property is located west of Baltimore–Washington International Airport (BWI) and is subject to west operations, including air carrier flight operations departing on Runway 28 to the west of BWI. Because west operations are safer and there are fewer delays because of reduced taxi time and further because the area west of BWI is less populated, the Federal Aviation Administration favors west operations that will continue at a projected level of 80 percent

or higher. Appellee's application for a permit to construct the twenty-seven residences was denied by the MAA on the basis that the proposed residences would be inside the Airport Noise Zone and the 65–70 Ldn noise contour.

The Board conducted a hearing on February 11, 1991 to consider appellee's request for the variance and reconvened on March 11, 1991 to resume its deliberations. The Board issued a written memorandum and order on April 24, 1991 denying the variance request by appellee and, on May 8, 1991, appellee filed a motion for reconsideration with the Board, which was subsequently denied.

Appellee thereafter filed an appeal with the Circuit Court for Anne Arundel County on July 18, 1991,[3] and the court, after a review of the record and oral argument, held that the Board erred as a matter of law when it considered the impact of factors other than noise on the surrounding community. In its October 2, 1992 decision, the court determined the Board's decision was arbitrary and reversed the Board's denial of the variance. It did, however, on October 20, 1992 amend the order of October 2, 1992 to require appellee to comply with additional conditions:

1. Appell[ee] shall comply with all construction specifications and shall grant unto the State an avigation easement, both as more specifically identified in Md.Trans. Code Sec. 5–822(c)(1) & (2).

2. Appell[ee] shall include in any contract of sale or construction for any portion of the subject property a provision notifying the contract purchaser(s) that the property or properties being purchased are located within the Airport Noise Zone and that said property is subject to the terms of the recorded avigation easement.

3. Construction of the homes pursuant to the variance hereby granted shall be completed within three (3) years

---

3. The parties had entered into a stipulation extending the time for filing the appeal in the circuit court.

from the date that this grant of variance, as conditioned herein, becomes final and non-appealable.

## ANALYSIS

Focusing on the rationale of the lower court that the Board's decision was arbitrary because its decision was based primarily on issues other than the impact of noise on the surrounding community, appellant asserts that

[t]he reviewing court's decision was erroneous because the legislative history of § 5–815(d) clearly indicates that the Board is empowered to consider issues other than noise regarding possible impacts on the surrounding community.

Section 10–215(g) of the State Government Article provides the standard for judicial review of an administrative agency's decision:

*Decision.*—In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the decision of the agency;  or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the agency;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted;  or

(vi) is arbitrary or capricious.

Relying on § 5–815 of the Transportation Article, appellant attempts to buttress its argument, asserting that "the Board is required to consider any facts and circumstances relevant to the request for variances, including any testimony or evidence presented regarding possible impacts on the surrounding community of the grant or denial of the proposed variance."

More specifically, MAA complains that the lower court should have considered the disparity in the density of appellee's proposed building lots as compared with the existing residential community.

Citing *Commission on Human Relations v. Washington County Community Action Council,* 59 Md.App. 451, 455, 476 A.2d 222 (1984), appellant insists that the issue before the circuit court should have been "whether reasoning minds could reasonably reach [its] conclusion by direct proof or by permissible inference from the facts and the record before the agency." MAA suggests that the court has no power to reject that conclusion when it is based upon substantial evidence. The substantial evidence relied upon by MAA is that granting a variance would result in a 50 percent increase in the population of the existing community where lot sizes were substantially larger than the proposed one lot per house.

Appellee responds by initially asserting that the Circuit Court for Anne Arundel County decided questions that were solely issues of law, thereby permitting it to substitute its judgment for that of the Board in reversing the order. Appellee urges that the question of the housing density of the subject property was not a matter properly before the Board and that such a determination was purely a question of law rather than a question of fact or a mixed question of law and fact. *See Comptroller v. World Book Childcraft,* 67 Md.App. 424, 508 A.2d 148, *cert. denied,* 307 Md. 260, 513 A.2d 314 (1986). Appellee sets forth the standard of judicial review we outlined in *World Book,* 67 Md.App. at 438–39, 508 A.2d 148:

1. First, the reviewing court must determine whether the agency recognized and applied the correct principles of law governing the case. The reviewing court is not constrained to affirm the agency where its order "is premised solely upon an erroneous conclusion of law."

2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factual findings to determine if they are supported by substantial evidence,

*i.e.,* by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. At this juncture, the *Ramsay, Scarlett [& Co. v. Comptroller,* 302 Md. 825 [490 A.2d 1296] (1985) ] court reminds us that "it is the agency's province to resolve conflicting evidence, and, where inconsistent inferences can be drawn from the same evidence, it is for the agency to draw the inferences."] *Id.* at 835, 490 A.2d 1296.

3. Finally, the reviewing court must examine how the agency applied the law to the facts. This, of course, is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is "whether, ... a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles]." [Citations omitted.]

Thus, the threshold question we must resolve is whether appellee is correct that the issue of housing density, as a matter of law, was not properly before the Board.

Section 5–507 provides, in pertinent part:

(c) *Board to act as fact finding body; considerations.*— On application for a variance, the Board shall act as a fact finding body and, among other things, shall consider any testimony or evidence presented regarding:

. . . .

(5) The impact of the proposed variance upon the surrounding community.

Section 5–815 provides, in pertinent part:

(a) *Power to grant variances.*—Subject to the provisions of this subtitle, the Board of Appeals may grant specific variances from noise zone regulations adopted under this part, if the design of a proposed structure or the repair, replacement, or change of a structure or use of land provides for sound insulation adequate to insure that interior noise levels resulting from airport operations will not exceed

those levels which would occur if the structure or land use were outside of the noise zone.

(b) *Application.*—Any person who desires to use his property in a manner prohibited by a noise zone regulation adopted under this part may apply to the Board for a variance from the regulation.

(c) *Conditions on variance.*—The Board may condition any variance so as to require the owner of any structure or land use to which the variance applies to construct the proposed structure or to repair, replace, or change the structure or use of land at his expense in a way that meets the requirements of subsection (a) of this section.

(d) *Consideration of relevant facts and circumstances.*— When reviewing a request for a variance under the airport noise zone regulations, the Board shall consider any facts and circumstances relevant to the request for variation, including any testimony or evidence presented regarding possible impacts on the surrounding community of the grant or denial of the proposed variance.

Whether the subject property lies within a zone determined by the Maryland Aviation Administrator, by regulation, to be exposed to noise levels that are incompatible with new residential development is not in dispute. The Board, in its Memorandum Opinion and Order, acknowledged that

[a]lthough that it was not stated at the hearing, it is clear from previous BAZA cases, and the Board takes notice of the fact, that this interior noise exposure level does *not* exceed that which would occur if the Subject Property were located outside the Noise Zone. [Emphasis added.]

Recognizing that in three of its appeals (BAZA docket Nos. 199, 202, and 238 considered on the 1988 and 1990 dockets) variances were granted for properties subject to noise exposure levels of 66 Ldn, 67 Ldn, and 71 Ldn, the Board, in its memorandum opinion, attempted to distinguish those cases by observing that each involved only one or two homes and, in two of the cases, "the noise level was significantly lower."

The ultimate decision of the Board, however, clearly rested on its conclusion that

[n]one involved high density development as proposed by Applicant, but rather proposed low density development consistent with the existing development of the area.

The opinion continued by noting that the properties for which variances were granted were in areas of existing residential development, contrasting the subject property that, the opinion observed, adjoined undeveloped residential property and industrial property.

The Board finally determined that "if a variance were granted, a significant number of people would be exposed to a noise level incompatible with normal patterns of living, particularly outdoor living." We are persuaded that the Board's opinion rested squarely on its conclusion that the question of density was of paramount import in its decision to grant or deny the variance.

From our review of the Board's memorandum opinion and order, the proceedings before the Board, the circuit court's oral opinion, and the extensive argument by counsel and colloquy with the court, we are persuaded that the issue before us is whether the lower court properly determined that the Board exceeded its authority in determining that the variance should be denied because of the increase in density. A subsidiary issue is whether, given the fact that the twenty-seven lots had already been recorded under the R12 classification and three applications for variances had been recently granted, the Board's decision was arbitrary and capricious.

■ As to matters of law, it is clear that when courts deal with such issues as interpretation of statutes and legislative intent, they are free to substitute their judgments for that of the agency. *Supervisor of Assess. of Howard County v. Carroll*, 298 Md. 311, 469 A.2d 858 (1984); *Supervisor of Assess. of Baltimore County v. Sloan*, 57 Md.App. 286, 469 A.2d 915 (1984); *Maryland Nat'l Bank v. State Dep't of Assess. & Tax.*, 57 Md.App. 269, 469 A.2d 907 (1984); *State Dep't of Assess. & Tax. v. Glick*, 47 Md.App. 150, 422 A.2d 34

(1980); *Supervisor of Assess. of Prince George's County v. Washington Nat'l Arena Ltd. Partnership,* 42 Md.App. 695, 402 A.2d 148 (1979).

■ While it is not always easy to determine what is a question of law and what is a question of fact, *Palmer Ford, Inc. v. Wood,* 298 Md. 484, 471 A.2d 297 (1984), it would seem that whether the Board was empowered to consider the question of density is purely a question of law. It is significant that the Board specifically made a factual finding pursuant to § 5–815 that the interior noise levels in the proposed residential structures resulting from airport operations would not exceed those levels that would occur if the structure or land use were outside the noise zone. Subsection (d), relied upon by appellant, does permit the Board to consider any facts and circumstances relevant to the request for variance, including any testimony or evidence regarding possible impacts on the surrounding community. Under § 5–815, however, such facts and circumstances not only must be relevant but must be considered when reviewing a request for a variance *under the Airport Noise Zone regulations.*

Section 5–802, which sets forth the purpose of the Airport Noise Zone regulations, provides:

The purpose of this subtitle is to:

(1) Provide a positive basis for abatement of existing noise problems in communities near airports and to prevent new noise problems; and

(2) Protect the health and general welfare of the occupants of land near airports.

■ The scheme for enforcement of noise zone regulations authorizes the administrator to adopt regulations establishing limits for noise exposure for residential and other land uses, to establish and implement a plan for the monitoring and abatement of noise on impacted land use, and to enact standards for the adaptation of structures within the noise zones in such a way that there will be the least impediment to the enjoyment of the structure and the land use. Nowhere in the noise zone regulations is there any reference to regulation of density

within the affected areas. Clearly, the administrator is empowered to determine noise levels that render the affected area uninhabitable. Indeed, the procedure whereby variances may be granted is the vehicle by which the Board makes a determination as to whether conditions may be imposed that would reduce the effect of the exposure to the noise from nearby operations.

The error of law, however, as we see it, is that the Board improperly denied the variance on the basis of the increase in the density that would have been occasioned by granting appellee's request. As we have indicated, we find no such authority in the noise regulations the administrator is obliged to implement.[4] As stated by the lower court:

> But let me just stop you there. Let's assume that on that third area, in other words the area of stopping people from moving into an area that is going to be a noise problem, all right? It seems to me that the State could have said that in any area that's so defined there shall be no permitted additional future use. They may have said, somebody's living there, we can't force them to go out or we can't limit them from being able to remodel their house if they're there provided they do something but we're not going to let anybody else go in there because to do so just—just you know creates—allows the continuation whether it be one house, two houses or ten houses, to allow them to go in there is just going to, you know, subject more people to this noise problem.

> So, you know, that's the first problem I'm having as I ident—identified before. The State could have said, no, no, no, we're putting a stop to this. This is an area where there's a problem, we're going to try and control the prob-

---

**4.** A draft version of Bill No. 552, "An Act concerning Airport Noise Zone Regulations," stated that one of the purposes of the Act was "prohibiting political subdivisions from increasing the number of noise sensitive land uses within a noise zone under certain circumstances." 1989 Md.Laws 509. This language was stricken prior to enactment. We glean from this deletion the legislative intent not to interfere with a political subdivision's decisions regarding residential density.

lem we're not going to let anybody go in there, but they didn't choose to do that, they said people can go in there provided they do two things.

The court then went on to allude to the requirement that applicants seeking a variance take steps to reduce the noise in the interior to a level that would exist outside of the zone and to relinquish any legal remedies for the interference with the enjoyment of the structure or land occasioned by noise pollution. It should be noted that the lower court, subsequent to the proceeding reversing the Board, required that appellee grant unto the State an avigation easement and include a notice in any contract of sale for the proposed structures to be built on the subject property that said properties are located within the Airport Noise Zone and subject to the terms of the recorded avigation easement.

The subject property had already been zoned R12; thus, there had been a determination as to both land use and density by virtue of that classification. We think that it would have been within the purview of the Board to determine that a variance should not be granted, but that determination could not be based upon the anticipated increase in density. In view of the grant of variances in the cases docketed in 1988 and 1990, it would seem that the Board's decision to deny appellee a variance for the reasons stated was arbitrary and capricious; however, our decision here is bottomed on what we believe to be an erroneous legal conclusion, *i.e.*, that the density was a proper consideration for determining whether to grant or deny the variance.

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSING THE BOARD OF AIRPORT ZONING APPEALS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.[5]

---

5. The variance requirements we address herein are based completely on the specific requirements of this statute. We do not base our decision on general zoning variance principles that are not directly applicable here. The Maryland Department of Transportation Board of Airport Zoning Appeals is a state administrative agency with limited

zoning jurisdictions. It is a zoning entity in name only and operates more as a general administrative agency than as a traditional zoning entity.